IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **CHARLIE LITTLE,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action Number |
| ) | **1:11-cv-1113-AKK** |
| **MICHAEL J. ASTRUE,** ) | |
| **COMMISSIONER OF SOCIAL** ) | |
| **SECURITY** ) | |
| **ADMINISTRATION,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Charlie Little ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision—which has become the decision of the Commissioner—is supported by substantial evidence, and, therefore, **AFFIRMS** the decision denying benefits.

### I. Procedural History

Plaintiff filed his application for Title II Disability Insurance Benefits ("DIB") on August 22, 2006, (R. 119-23), originally alleging a disability onset date of July 24, 1994, (R. 119), but later amending this date to December 30, 1999,

(R. 63), from "diabetes leading to renal insufficiency, peripheral neuropathy, and diabetic retinopathy; arthritis in his knees, bilateral carpal tunnel syndrome, and hypertension," (R. 15).  Plaintiff's date last insured was June 30, 2000. (R. 15). On September 26, 2006, the SSA denied his application, (R. 76), and Plaintiff requested a hearing before the ALJ, which occurred on February 18, 2009. (R. 39-74). On July 27, 2009, the ALJ denied Plaintiff's disability claim, (R. 14-18), which became the final decision of the Commissioner when the Appeals Council refused to grant review. (R. 1-3). Plaintiff then filed this action for judicial review pursuant to 42 U.S.C. § 405(g). Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) mandates that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1)     whether the claimant is currently unemployed;

  (2)  whether the claimant has a severe impairment;

  (3)  whether the impairment meets or equals one listed by the Secretary;

  (4)  whether the claimant is unable to perform his or her past work; and

  (5)  whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).

## IV. The ALJ's Decision

In applying "Step 1," the ALJ found that Plaintiff engaged in substantial gainful activity *after* his alleged onset date of December 30, 1999, and therefore is *not* disabled "regardless of his medical condition or his age, education, and work experience." (R. 15) (citing 20 C.F.R. § 404.1520(b)). In support, the ALJ cites Plaintiff's testimony that he worked as a middle school science teacher at Hadley Middle School in Roanoke, Alabama from January 2, 2002 until April 16, 2002. At this position, Plaintiff earned approximately $3,000 per month. (R. 16, 53-54). Accordingly, the ALJ referred to the SSA's presumptive guidelines regarding a claimant's monthly earnings and concluded that Plaintiff engaged in substantial gainful activity. (R. 15-16) (citing 20 C.F.R. § 404.1574(b)(2)(ii)). This regulation provides that the SSA "will consider that your earnings from your work

activity as an employee . . . show that you engaged in substantial activity if: . . . (ii) Beginning January 2, 2001, and each year thereafter, they average more than the larger of: (A) The amount for the previous year, or (B) An amount adjusted for national wage growth, calculated by multiplying $700 by the ratio of the national average wage index for the year 2 calendar years before the year for which the amount is being calculated to the national average wage index for the year 1998." 20 C.F.R. § 404.1574(b)(2). The ALJ found that in 2001, $740 constituted this presumptive level of monthly earnings, which increased to $780 in 2002. (R. 15). Therefore, Plaintiff's employment at Hadley Middle School "is [substantial gainful activity] because it exceeds the threshold for 2002 - $780." (R. 16).

Moreover, the ALJ rejected Plaintiff's argument that his 2002 teaching position constitutes an "unsuccessful work attempt"—rather than substantial gainful activity—as defined by 20 C.F.R. § 404.1574(c). (R. 16-17). This regulation provides, in relevant part, that the SSA "will consider work that lasted longer than 3 months to be an unsuccessful work attempt if it ended, or was reduced below substantial gainful activity earnings level, within 6 months because of your impairment or because of the removal of special conditions which took into account your impairment and permitted you to work *and* - - (i) You were frequently absent from work because of your impairment . . . ." 20 C.F.R. § 404.1574(c)(4) (emphasis added).[1] The ALJ discussed both applicable prongs of

---

[1] Plaintiff argued for the applicability of 20 C.F.R. § 404.1574(c)(3) during the ALJ hearing. The ALJ, however, disagreed—"Section (c)(3) applies if a claimant works three months

section (c)(4): whether Plaintiff quit his position because of a disabling impairment, and whether this impairment caused frequent absences. (R. 16-17).

First, the ALJ found insufficient medical evidence to support Plaintiff's contention that he quit his teaching position because of "episodes of diabetes." (R. 16). At the ALJ hearing, Plaintiff testified that he stopped working in April 2002 due to diabetes related symptoms—specifically, he experienced dizziness and nausea "to the point that I couldn't really function"—and in support, Plaintiff cited three VA hospital visits in March 2002. (R. 58-62). However, after reviewing these medical records, (R. 563-591), the ALJ found that "those visits were for treatment of *fever, chills, headache, and cough – not diabetes*." (R. 16) (emphasis in original). Moreover, while Plaintiff testified that his physician, Dr. Christian L. Jimmerson, "advised me that the best thing would be . . . to let go of the job," (R. 58), the ALJ stated that "Claimant presents no corroborating medical evidence, and my review of the VA records uncovers no evidence that any doctor told Claimant to quit for any reason." (R. 16).

In addition to rejecting Plaintiff's allegation that impairments forced his resignation, the ALJ also determined that "neither payroll records from Roanoke City Schools nor treatment records from the VA support Claimant's testimony that during the spring of 2002, he was frequently absent from work due to medical

---

or less. Here, Claimant worked for more than three months: from January 2, 2002, through either April 16, 2002 (according to his testimony) or as late as June 30, 2002 (according to his application)." (R. 16). And indeed, Plaintiff abandoned any arguments under section (c)(3). Doc. 8, at 8.

problems." (R. 17). More specifically, the ALJ provided that, although Plaintiff had 11 absences from this teaching position, "inspection of the payroll records indicates that in March, three absences were labeled 'sick' . . . three, 'unavoidable'; one, 'personal'; and three, 'unpaid'. The one absence in April was labeled 'sick'." *Id.* (citing R. 115-18). Furthermore, besides the March 2002 hospital visits, the ALJ found that Plaintiff's medical records only reveal a May 13, 2002 "'routine [hospital] visit . . . ambulatory and in no acute distress' [R. 563]; and on July 18, he went to the Podiatry Clinic for new diabetic shoes which were prescribed [R. 553-554], but he failed to fill the prescription [R. 443]." (R. 17). Thus, the ALJ ultimately concluded that "from January 2, 2002, through April 16, 2002, Claimant engaged in [substantial gainful activity]; that the [substantial gainful activity] was not an unsuccessful work attempt; and that, therefore, he was not disabled, at least through the end of that period of [substantial gainful activity]." *Id.*

## V. Analysis

The court turns now to Plaintiff's two contentions of error—(1) the ALJ improperly considered his January–April 2002 employment because, in making a disability determination, the ALJ "should be restrained to stay within the parameters of the time period between the alleged onset of disability date and date last insured," doc. 8, at 6, and (2) the January–April 2002 employment "is not substantial gainful work activity and should not, in any way, inhibit the plaintiff's

ability to draw disability benefits, should he be found to be disabled," *id.* at 8.

    *A.*    *Disability Application*

The court finds no error in the ALJ's consideration of the 2002 employment. "In order to be entitled to disability benefits, [claimant] must have applied for benefits while disabled or no later than twelve months after the month in which his period of disability ended." *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002) (citing 20 C.F.R. §§ 404.315(a)(3), 404.320(b)(3), 404.621(d)). *See also* 20 C.F.R. §§ 404.320(a) ("A period of disability is a *continuous period* of time during which you are disabled.") (emphasis added). Accordingly, to receive DIB, the claimant must demonstrate a continuous period of a disability from the date last insured, or, the claimant must have filed his application for DIB within one year of his disability ending. Here, Plaintiff alleges an ongoing disability, (R. 119), thus, he must present evidence of a *continuous* disability beginning on the date last insured—June 30, 2000. *See Wilson*, 284 F.3d at 1227 ("[T]he record simply does not reflect that Wilson's conditions and symptoms continued at a disabling level of severity through September 18, 1995, one year prior to the filing of his application . . . . Thus, the ALJ's finding that Wilson did not exhibit a continuous disability stemming from his 1982 accident was supported by substantial evidence.").

Moreover, a finding of "substantial gainful activity" effectively ends a disability period. *See* 20 C.F.R. § 404.1571 ("If you are able to engage in substantial gainful activity, we will find that you are not disabled."). *See also*

*Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991) ("[Claimant's] ability to engage in substantial gainful activity meant that her prior disability had ceased."). Logically, as "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . .," 42 U.S.C. 423(d), if a person participates in substantial gainful activity, the disability no longer exists. Therefore, the court accepts the Sixth Circuit's reasoning in *Mullis v. Bowen*, 861 F.2d 991 (6th Cir. 1988), that a finding of substantial gainful activity ends the "continuous disability period," and as a result, precludes any untimely sought disability status. *Id.* at 994. In *Mullis*, the claimant applied for disability on December 26, 1984, alleging March 15, 1981 as his onset disability date with his insured status expiring on December 31, 1981. The record revealed, however, that the claimant engaged in substantial gainful activity from February 28, 1983 to August 5, 1983. *Id.* at 992. Accordingly, the court concluded that "[t]his substantial gainful activity ended any disability status that [claimant] may have enjoyed" from March 15, 1981 until February 28, 1983. *Id.* at 994. In other words, the claimant in *Mullis* "was not continuously disabled during the period from December 31, 1981 (the date of the expiration of [claimant's] insured status) to December 26, 1983 (the date twelve months prior to [claimant's] application). [Claimant] is thus ineligible for all disability benefits claimed in his December 26, 1984 application." *Id. See also Arnone v. Bowen*, 882 F.2d 34, 38 (2d Cir. 1989) (holding that claimant "cannot obtain disability insurance benefits unless he is eligible for a 'period of disability.' He cannot be

entitled to a 'period of disability' unless his back problems rendered him disabled beginning no later than March 1977 [date of last insured status] and continuing at least until January 1980 [one year before application for benefits].").

As it relates here, Plaintiff must establish a continuous disability from the date last insured until at least August 22, 2005—twelve months before his DIB application. (R. 119). If Plaintiff engaged in substantial gainful activity prior to August 22, 2005, then Plaintiff cannot recover DIB. Thus, the fact that the ALJ considered whether Plaintiff's January–April 2002 employment constitutes "substantial gainful activity" is not reversal error, rather, it is a necessary inquiry into the propriety of granting benefits. Plaintiff, on the other hand, argues that the ALJ erred because his analysis "means that the [claimant] can be working at any time from birth forward and the work activity will be relevant to the disability determination." Doc. 8, at 5. Additionally, Plaintiff asserts that "if [he] works after the date that he is last insured for Title II disability benefit, that work activity is not relevant to the initial disability determination of whether the plaintiff is disabled prior to the date last insured." *Id.* at 5-6. The court finds this reasoning unpersuasive because the relevant inquiry is whether the claimant engaged in substantial gainful activity after the onset date, thereby destroying the *continuous* period of disability for purposes of a timely filed application for DIB.[2]

---

[2] Moreover, the court notes that counsel for Plaintiff seemingly admits that this is the proper standard in a letter to the ALJ dated March 3, 2009. (R. 111) ("Of course, this presupposes that the work that he did in 2002 is deemed by the Court to be an unsuccessful work attempt and not substantial gainful work activity which would interrupt the claimant's claim of

### B.     *Substantial Gainful Activity*

The ALJ's conclusion that Plaintiff's January–April 2002 employment satisfies the "substantial gainful activity" standard is supported by substantial evidence.  It is undisputed that Plaintiff earned approximately $3,000 per month while employed with Roanoke City Schools from January 2, 2002 until April 16, 2002.  (R. 54, 128).  The federal regulations establish that, "[g]enerally, in evaluating your work activity for substantial gainful activity purposes, our primary consideration will be the earnings you derive from the work activity."  20 C.F.R. § 404.1574(a)(1).  Plaintiff's earnings exceeded the "ordinary" level for substantial gainful activity in 2002, *see* 20 C.F.R. § 404.1574(b)(2), and, accordingly, this earnings amount creates a presumption that Plaintiff engaged in substantial gainful activity.[3]  For example in *Edwards v. Sullivan*, 937 F.2d at 584, the claimant argued that a prior finding of disability is binding on the Secretary for a

---

continuous disability.").

[3] The court agrees with Plaintiff's policy statement that "the social security regulations are framed so that individuals are encouraged to attempt to return to work so that they will not be a drain on the social security trust fund."  Doc. 8, at 10.  However, here, the ALJ reasonably concluded that Plaintiff's employment constituted substantial gainful activity thereby negating the disability allegation, rather than a failed work attempt.  Furthermore, the court notes, although not raised by the parties, that Plaintiff cannot utilize the "trial work period."  *See* 20 C.F.R. § 404.1592.  This federal regulation effectuates Plaintiff's stated policy because it allows individuals "a period during which you may test your ability to work and still be considered disabled."  *See* 20 C.F.R. § 404.1592(a).  The trial period is not applicable here though because it is only available for work performed *after* the DIB application is filed.  20 C.F.R. § 404.1592(d)(2)(iv) ("You are not entitled to a trial work period . . . [f]or any month prior to the month of your application for disability benefits.").  It is undisputed that the work period at issue occurred prior to Plaintiff's application for benefits.

subsequent DIB application. The Eleventh Circuit disagreed because "from 1979 until 1985, [claimant] was employed and earned income in excess of the earning guidelines used to determine whether an individual has engaged in substantial gainful activity. 20 C.F.R. § 404.1574(b)(2) (1986). Her ability to engage in substantial gainful activity meant that her prior disability had ceased, and thus is not binding on the Secretary in this second application for benefits." *Id. See also Squires v. Social Security Admin., Comm'n*, 441 F. App'x 659, 660 (11th Cir. 2011); *Mullis*, 861 F.2d at 993; *Thompson v. Sullivan*, 878 F.2d 1108, 1110 (8th Cir. 1989).

However, this presumption may be rebutted, and Plaintiff attempts to do so by arguing that the 2002 employment constitutes an "unsuccessful work attempt." *See* 20 C.F.R. § 404.1574(c). As correctly stated by the ALJ, this argument—as it relates to Plaintiff's employment here—has two prongs: (1) whether Plaintiff left the position "because of [his] impairment," and (2) whether Plaintiff was "frequently absent from work because of [his] impairment." 20 C.F.R. § 404.1574(c)(4). The ALJ's decision that Plaintiff failed to meet either prong is supported by substantial evidence. First, and most importantly, the ALJ provides substantial evidence that Plaintiff failed to sufficiently demonstrate that his work ended in April 2002 *because of* his claimed impairment—diabetes. (R. 58). At the ALJ hearing, Plaintiff testified that he stopped work in April 2002 because "at times, my sugar level would, would plummet out. I would get to the point that I would become dizzy and nauseated, to the point that I couldn't really function, and

so that - - it kept happening. So, when I went in, and I talked to my physician, he advised me that the best thing would be to do is to let go of the job." *Id.* In contrast, the only medical records presented for the relevant time period provide that Plaintiff went to the Emergency Room on March 3, 2002 for subjective fever/chills, aching joints, back pain, and possible meningitis, but he left the hospital against medical advice with an amoxacillin prescription, (R. 580-90, 569); Plaintiff again went to the Emergency Room on March 4, 2002 for "non-urgent" care related to "flu-like illness" including fever/chills, muscle aches, and malaise, (R. 566-80); and finally, Plaintiff's March 6, 2002 medical records reveal a diagnosis of influenza with complaints of headache and lower back pain but a denial of any visual changes, weakness, or neck pain, (R. 564-66). Stated simply, these March 2002 medical records offer no diabetes-related complications, and there is also no medical indication that Plaintiff should end his employment.

Moreover, Plaintiff presented for a "routine visit" on May 13, 2002, "ambulatory and in no acute distress." (R. 563). Dr. Jimmerson performed a diabetic foot exam during this check-up and also ordered a diabetic eye exam. (R. 562). Furthermore, Dr. Jimmerson stated: "The patient is here for follow-up. Last seen a year ago. Since that time he has been seen in the MOD walk in clinic. Today he complains of some right sided pain, right flank since Friday. He does lift weights. It sort of feels like a catch in his right side. He is only taking insulin right now. A little frustrated at the inability to get hypertension connection to his service connection. He continues to complain of pain. He needs some diabetic

shoes." (R. 554).[4] Thus, the medical evidence immediately after April 16, 2002 similarly reveals no indication that Plaintiff ended his employment because of a diabetic impairment. And, the court refuses to reverse the ALJ's finding based on Plaintiff's need for diabetic shoes especially when Plaintiff failed to fill this prescription. (R. 443).

Additionally, substantial evidence supports the ALJ's conclusion that Plaintiff failed to sufficiently demonstrate that he was frequently absent from work in March and April 2002 *because of* his claimed impairment—diabetes. The Roanoke City Schools' records indicate ten absences for Plaintiff in March 2002 for sickness (3), personal (1), unavoidable (3), and unpaid (3), and one absence in April 2002 for sickness. (R. 115-18). Yet, the school's records offer no further explanation of the absences other than "physical incapacitation," (R. 114), and as

---

[4] The court also notes a Memorandum prepared by Dr. Jimmerson on August 20, 2009, (R. 800), despite the fact that neither party discussed this evidence. In the Memorandum, Dr. Jimmerson asserts, in relevant part, "Mr. Charlie Little has been a patient of mine since ~ May 2000 . . . . In 2002, his A.C. was 8.8. After reducing his activity and work his A.C. improved to 7.6 by June 2003. The recommendation to quit working did help with his glycemic control but only temporarily. His A.C. was 12.5 in August 2005. And his kidney function declined – now he is on hemodialysis." *Id.* This Memorandum raises an inference that, at some point, Dr. Jimmerson recommended that Plaintiff stop working—even though such recommendation is absent from all treatment notes; however, the time frame is inconsistent with the January–April 2002 work at issue. As previously stated, Plaintiff's medical records indicate that Dr. Jimmerson evaluated Plaintiff on May 13, 2002, and noted that Plaintiff "was last seen a year ago." (R. 554). *See also* (R. 241) (Plaintiff's "Health Summary" showing that he last visited Dr. Jimmerson on May 3, 2001). As such, any recommendation to stop working from Dr. Jimmerson came before Plaintiff started with Roanoke City Schools or after Plaintiff had already stopped working on April 16, 2002. Put simply, the ALJ's decision is still supported by substantial evidence regardless of this Memorandum, and indeed, Plaintiff never raised the Memorandum as evidence to bolster his argument. *See generally* doc. 8.

discussed previously, Plaintiff only presents medical evidence for March 3, 4, and 6, 2002—none of which pertain to diabetic complications. Furthermore, Plaintiff's "Health Summary" reveals no other medical appointments in January–April 2002 for which Plaintiff attended (the records indicate a "no-show" for an April 1, 2002 optometry appointment). (R. 241).

In the final analysis, in order to rebut the presumption that he engaged in substantial gainful activity, the federal regulations require Plaintiff to provide some evidence of causation between frequent absences and the alleged impairment. *See* 20 C.F.R. § 404.1574(c)(4)(i). The ALJ's conclusion that Plaintiff failed to sufficiently demonstrate the causation element is certainly reasonable and supported by the objective medical evidence. Therefore, as Plaintiff engaged in substantial gainful activity, not an unsuccessful work attempt, he cannot claim a "continuous" disability, and, accordingly, the ALJ properly denied benefits.[5]

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Plaintiff engaged in substantial gainful activity is supported by the evidence,

---

[5] Similar to the ALJ, (R. 17, n.8), the court adds that, after a thorough review of the entire record, the objective medical evidence supporting a disability claim before June 30, 2000 (date last insured) is scarce. *See also* (R. 332). In May 2000, Plaintiff reported to Dr. Jimmerson that "blood sugars are doing okay." (R. 607). Dr. Jimmerson also had Plaintiff fit for new splints/braces regarding carpel tunnel syndrome and only reported, without any further detail or mention of complication, "borderline hypertension" with a "history of renal insufficiency." (R. 608-09). Moreover, the substantial majority of Plaintiff's medical records in 2000 pertain to periodontal disease and oral surgery. (R. 242, 611).

and that the ALJ applied proper legal standards in reaching this determination. The final decision of the Commissioner is, therefore, **AFFIRMED**. A separate order in accordance with this memorandum of decision will be entered.

Done the 11th day of May, 2012.

                                                                                        _____
                                                            **ABDUL K. KALLON**
                                                       UNITED STATES DISTRICT JUDGE